**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PERRY E. FLANYAK,** | : |
| **Plaintiff** | :   **CIVIL ACTION NO. 3:04-1634** |
| v. | :   **(MANNION, M.J.)** |
| **DAVID E. HOPTA and MARVA CERULLO,** | : |
| | : |
| **Defendants** | : |
| | : |

## MEMORANDUM AND ORDER

Presently pending before the court is the defendants' unopposed[1] motion for summary judgment. (Doc. No. 37).

## I.  PROCEDURAL HISTORY

On July 26, 2004, the plaintiff, an inmate at the State Correctional Institution at Mahanoy, ("SCI-Mahanoy"), Frackville, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. §1983, in which he alleges that defendant Hopta violated his Eighth Amendment rights by subjecting him to unsafe conditions in the prison's welding shop and that defendant Cerullo was deliberately indifferent to his resulting medical needs. (Doc. No. 1).

---

[1]After the time had passed for filing an opposing brief, the plaintiff filed correspondence with the court indicating that he had not received certain documents which he had requested from the defendants' counsel in order to prepare for trial. The plaintiff did not in any way, however, address the defendants' pending motion for summary judgment or indicate that he was impeded from doing so. (Doc. No. 40).

On the same day the plaintiff filed the appropriate application to proceed *in forma pauperis*, (Doc. No. 2), and authorization form, (Doc. No. 3). As a result, a financial administrative order was issued. (Doc. No. 4).

On September 27, 2004 the plaintiff requested appointment of counsel. (Doc. No. 12). The district court judge, then assigned to the case, denied that motion on November 8, 2004. (Doc. No. 16).

By order dated August 27, 2004, it was directed that the Clerk of Court forward the plaintiff's complaint to the United States Marshal for service. (Doc. No. 9). The defendants waived service of the plaintiff's complaint, and on November 1, 2004, the defendants filed their answer to the plaintiff's complaint. (Doc. No. 15).

By notice dated November 18, 2004, the parties consented to the exercise of jurisdiction by the undersigned and the case was reassigned. (Doc. Nos. 19, 21). On December 2, 2004 the undersigned, *sua sponte*, reconsidered the previous order denying appointment of counsel and conditionally granted the plaintiff's request for counsel pursuant to MDPA LR 83.34.4.2, requesting review by the district's *pro bono* panel. (Doc. No. 22). After multiple reviews, the court was advised that no counsel would agree to undertake representation of the plaintiff on this claim. (Doc. Nos. 25, 28, and 29). The court, subsequently revoked its conditional order of appointment. (Doc. No. 30).

A scheduling order was issued by the court on June 1, 2005. (Doc. No.

30). After having been granted an extension of time to do so, (Doc. No. 33), on November 30, 2005, the defendants filed the instant motion for summary judgment, (Doc. No. 37), along with a statement of material facts, (Doc. No. 38), and supporting brief, (Doc. No. 39).

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the

3

absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence or make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

## III.   DISCUSSION

In his complaint, the plaintiff alleges that he worked as a production welder for Correctional Industries while confined at SCI-Mahanoy from November 2000 through July 2002. While there, the plaintiff alleges that he reported to the medical department with complaints of shortness of breath,

4

dizziness and loss of balance, vision problems, and heart problems[2]. Subsequently, the plaintiff alleges that he underwent a chest x-ray which revealed that he had chronic obstructive pulmonary disease. According to the plaintiff, he informed his foreman of his condition and requested that he be placed in an inspector's position which would remove him from excessive exposure to welding smoke, dust, etc. The plaintiff alleges that his foreman indicated that he would discuss the situation with defendant Hopta, the Correctional Industries Supervisor.

A few days later, the plaintiff alleges that he again reported to the medical department with complaints of symptoms. The next day, the plaintiff indicates that he was told that he no longer had a job in Correctional Industries because there was no position available to him which would not expose him to smoke. (Doc. No. 1, p. 2 & Attachment B).

The plaintiff alleges that two (2) days later he was approved for a promotional transfer, but that he waited for months to be transferred. During this time, the plaintiff alleges that he received only idle pay and no medical treatment for his conditions other than hypertension. (Doc. No. 1, Attachment B).

In November 2002, the plaintiff alleges that he was transferred to SCI-Waynesburg, where he was treated for chronic obstructive pulmonary

---

[2]At the time, the plaintiff alleges that he was already being treated for hypertension. (Doc. No. 1, p. 2).

5

disease, vertigo, and heart palpitations. According to the plaintiff, the physician at SCI-Waynesburg informed him that he "should never of been on the medication that S.C.I. Mahanoy Medical had prescribed, the dosage was much too high and not the correct type." (Id.).

Subsequently, the plaintiff alleges that he was diagnosed with Diabetes Type II and had x-rays taken for what he believes to be sciatic or lumbar nerve pain attributed to his work in the Correctional Industries. (Doc. No. 1, Attachment B).

As a result of his conditions, the plaintiff alleges that he is now classified as "mobility impaired," and that he requires the use of a cane. The plaintiff alleges that he is also classified as "medically idle," and cannot work. (Doc. No. 1, Attachment B).

The plaintiff attributes his condition to his exposure to "toxic welding fumes, dust and smoke for extended periods of time," which was the result of inadequate and poorly maintained exhaust and ventilation systems at SCI-Mahanoy. In addition, the plaintiff alleges that the welders were not provided respirators, but only dust masks, which were inadequate. The plaintiff believes his vision problems are attributable to being constantly "flashed" while welding.

With respect to defendant Hopta, the plaintiff alleges that he was his supervisor while employed for Correctional Industries, and that he was informed of the plaintiff's need to be employed in a position away from welding

6

smoke, dust, etc. due to his medical conditions. The plaintiff alleges that defendant Cerullo is liable under the Eighth Amendment as the Corrections Health Care Administrator, who was in charge of the medical department at SCI-Mahanoy. The plaintiff alleges that both defendants exhibited negligence and deliberate indifference toward his safety and health.

Based upon the above allegations, the plaintiff is seeking monetary damages for all lost wages from the time he was removed from his job at SCI-Mahanoy and for any future earnings potential while incarcerated and after release from prison, including retirement, pain and suffering, mental anguish and any other psychological problem that may arise. The plaintiff is further seeking damages for all medical expenses, medications, filing fees and court costs.  (Doc. No. 1, §V, ¶¶ 1-3).

In an attempt to pierce the allegations of the plaintiff's complaint and attempt to show that no genuine issue of fact remains for trial, the defendants have submitted a statement of material facts, supported by exhibits, which establishes that the plaintiff is currently serving a six (6) to twelve (12) year sentence for involuntary deviate sexual intercourse and related charges. (Doc. No. 38, ¶ 3).

In August 1998, the plaintiff was transferred from SCI-Camp Hill to SCI-Mahanoy. Subsequent to his transfer, from November 13, 2000, to July 23, 2002, the plaintiff was employed as a welder in Correctional Industries. (Doc. No. 38, ¶ 4; Ex. 1).

In February 2002, the plaintiff was scheduled for a chest x-ray, the results of which indicated "Chest-Chest x-ray is compared to prior examination from 2/6/98. The heart and mediastinum are normal in contour and position. There is mild COPD but no definite infiltration, CHF, pneumothorax or mass is noted. IMPRESSION: Mild COPD; no active disease. Peter G. Gregory, M.D. 02/15/02." (Doc. No. 38, ¶ 5; Ex. 1).

In July 2002, the plaintiff's institutional employment was limited due to his complaints of medical symptoms. Subsequently, it was indicated that the plaintiff was indefinitely precluded from performing jobs that caused any exposure to inhaling smoke, including welding. (Doc. No. 38, ¶ 6; Ex. 1). As a result, on July 23, 2002, the plaintiff was removed from his job in Correctional Industries. (Doc. No. 38, ¶ 7; Ex. 1).

In August 2002, the plaintiff requested that his medical clearance be changed to allow him to go back to work in Correctional Industries. This was done on August 31, 2002, with a notation that "small amount of smoke inhalation on job OK." (Doc. No. 28, ¶ 8; Ex. 1). Based upon this change, on September 6, 2002, the plaintiff submitted a request to be returned to Correctional Industries. (Doc. No. 38, ¶ 9; Ex. 1). In response to the plaintiff's request, on September 10, 2002, defendant Hopta, Corrections Industries Supervisor, indicated that, in light of the plaintiff's impending transfer[3], he did

---

[3]The plaintiff was ultimately transferred on November 19, 2002. (Doc. No. 38, ¶ 10; Ex. F).

8

not want to train the plaintiff for another job and that the plaintiff's health and well-being were more important. (Doc. No. 38, ¶ 10; Ex. 1).

The defendants' materials provide that the Pennsylvania Department of Corrections has established an inmate grievance review system to permit prisoners in its custody to have access to a formal procedure to resolve problems or other issues arising during the course of their confinement. (Doc. No. 38, ¶ 11; Exs. 1 & 2).

Pursuant to DC-ADM 804, an inmate who is personally affected by a Department or institutional action or policy or by the action of a Department employee is permitted to file a grievance after attempting to resolve the issue informally. The grievance must be submitted in writing to the Facility Grievance Coordinator, using the grievance form which is available on all housing units or blocks. (Doc. No. 38, ¶ 12; Exs. 1 & 2). The Facility Grievance Coordinator then assigns a grievance tracking number upon receipt and enters all grievances into the Automated Inmate Grievance Tracking System. Each accepted grievance is then assigned to a Grievance Officer for review. The Grievance Officer shall provide a written response to the inmate with a copy provided to the Facility Grievance Coordinator. (Doc. No. 38, ¶ 13; Exs. 1 & 2).

If the inmate is not satisfied with the response from the Grievance Coordinator, the inmate may appeal to the Facility Manager (Superintendent) raising only those issues that were part of the initial grievance. The Facility

Manager will provide a written response to the inmate's appeal. The appeal response can uphold, modify, remand, or reverse the response of the Grievance Coordinator. The Facility Manager can also assign the grievance appeal for further fact finding. (Doc. No. 38, ¶ 14; Exs. 1 & 2).

If the inmate is not satisfied with the decision of the Facility Manager, the inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. Again, only issues raised in the original grievance and appeal may be raised on final appeal. The inmate may not appeal to the Secretary's Office of Inmate Grievances and Appeals until he has filed for initial review and an appeal to the Facility Manager. (Doc. No. 38, ¶ 15; Exs. 1 & 2). Moreover, when an inmate appeals to final review, he/she must provide copies of the initial grievance, the initial review response, the appeal to the Facility Manager, and the Facility Manager's response. (Doc. No. 38, ¶ 16; Exs. 1 & 2).

In reviewing a final appeal, the Secretary's Office may uphold, modify, reverse or remand the initial review response, or may direct further fact finding. The Secretary's Office will provide a copy of its decision to the inmate and the Facility Manager, as well as maintain a copy for its own records. (Doc. No. 38, ¶ 17; Exs. 1 & 2).

The defendants' materials provide that a review of the Automated Inmate Grievance Tracking System indicates that the plaintiff did not submit any grievance regarding his safety, health and working conditions or job

related issues while at SCI-Mahanoy. (Doc. No. 38, ¶¶ 18, 23; Exs. 1 & 2).

On February 16, 2005[4], the plaintiff did submit a grievance alleging that he had been denied medications for chronic pulmonary disease. On February 22, 2005, the plaintiff received a response to his grievance which indicated that he had been prescribed Maalox tablets and that he had refused other prescribed medications. It was further indicated that the physician and physician's assistants were the people who determine what medications are needed. (Doc. No. 38, ¶ 20; Exs. 1 & 2). On March 4, 2005, the plaintiff filed an appeal to the Superintendent, who denied the appeal on March 11, 2005. (Doc. No. 38, ¶ 21; Exs. 1 & 2). The plaintiff attempted to file a final appeal to the Secretary's Office of Inmate Appeals and Grievances, but did not follow the proper procedures. On March 21, 2005, the plaintiff was advised of the defects in his appeal and was given ten (10) days within which to correct the defects. The plaintiff never did so. (Doc. No. 38, ¶ 22; Exs. 1 & 2).

According to the defendants' materials, at all relevant times, SCI-Mahanoy was an accredited correctional facility in accordance with the American Corrections Association. In order to receive such accreditation, the institution must meet certain standards including, but not limited to, safe working areas for inmates. The institution must also comply with building and

---

[4]The plaintiff was transferred out of SCI-Mahanoy from November 19, 2002, and was not returned until January 18, 2005. (Doc. No. 38, ¶ 19; Ex. 1).

safety codes, environmental conditions, safety and emergency procedures, sanitation and hygiene, and inmate health care. Additionally, all SCI-Mahanoy buildings, operations and work areas are subject to independent team inspection and audit to assure compliance with acceptable standards. (Doc. No. 38, ¶¶ 24-25; Ex. 1).

In their motion for summary judgment, the defendants initially argue that they are entitled to summary judgment based upon the plaintiff's failure to exhaust administrative remedies with respect to the claims he now attempts to raise. (Doc. No. 39, pp. 3-8).

The Prison Litigation Reform Act, ("PLRA"), requires prisoners to exhaust administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. §1983. To this extent, the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Prison conditions" include ". . . the effects of actions by government officials on the lives of persons confined in prison . . ." 18 U.S.C. §3626(g). Civil actions under this provision relate to "the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." McCray v. Williams, 357 F.Supp.2d 774, 779 (D.Del. 2005)(citing Booth v. Churner, 206 F.3d 289, 291 (3rd Cir. 2000)).

Regardless of the relief requested, compliance with the exhaustion of administrative remedies requirement is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). Moreover, the Third Circuit has recognized that there is no futility exception to the exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002)(citing Nyhuis, 204 F.3d at 78). A prisoner must properly exhaust administrative remedies or risk procedural default. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

As previously set forth, DC-ADM 804 provides for a three-part administrative process: an initial review by the facility's Grievance Coordinator, an appeal to the Facility Manager (Superintendent), and a final appeal to the Secretary's Office. Only after exhaustion of this administrative process may a prisoner seek recovery in federal court. Roach v. SCI Graterford Medical Dept., 398 F.Supp.2d 379, 384 (E.D.Pa. 2005).

With respect to the instant action, on his complaint form, the plaintiff indicates with respect to exhaustion that he did not file a grievance concerning the facts alleged in his complaint. (Doc. No. 1, p. 1). To this extent, the plaintiff indicates "[g]rievance procedure completed to extent feasible, any further would be futile. (Claim is for work related injury - monetary damages only)." (Id.). Moreover, in his deposition testimony, the plaintiff admitted that he did not exhaust his administrative remedies with respect to the claims he now attempts to raise. There, the plaintiff indicated various reasons for failing to do so, including the fact that he liked his boss and he liked his job and wanted to

keep it. Finally, the documentation submitted by the defendants in relation to the Automated Inmate Grievance Tracking System confirms that the plaintiff failed to exhaust his administrative remedies with respect to the claims which he now attempts to raise. (Doc. No. 38, Ex. 1).

Regardless of the plaintiff's reasons for doing so, the record establishes that he failed to exhaust his administrative remedies, which is a mandatory requirement for proceeding with a §1983 action in federal court. Thus, the defendants' motion for summary judgment will be granted on this basis.

In the alternative, the defendants argue that they are entitled to summary judgment on the merits of the plaintiff's claims. (Doc. No. 39, pp. 9-15).

In the context of conditions of confinement, the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement such as adequate food, clothing, shelter and medical care. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). The failure of prison officials to provide inmates with these "basic human needs" will result in their constitutional liability under the Eighth Amendment. See Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981). The Constitution "does not mandate comfortable prisons" Id. at 349. In fact, prison conditions may be "restrictive and even harsh," and are part of the penalty that criminal defendants pay for their offenses against society. Id. at 347.

Before a prison official can be found constitutionally liable for denying

an inmate humane conditions of confinement, it must be shown that the alleged deprivation is objectively "sufficiently serious" and that the prison official had a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297-98 (1991). A prison official's act or omission is objectively "sufficiently serious" when it results in the denial of "the minimal civilized measure of life's necessities." Farmer v. Brennan, __U.S.__, 114 S.Ct. 1970, 1977 (1994). The Court in Farmer went on to hold that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw that inference." Farmer, __U.S.__, __, 114 S.Ct. 1970, 1979 (1994).

With respect to the instant action, there is no indication from the plaintiff's complaint that defendant Hopta was aware of and disregarded an excessive risk of harm to the plaintiff. In fact, according to the plaintiff's own testimony, he never complained to defendant Hopta about his working conditions, nor did he file a grievance relating to those conditions. Moreover, the record establishes that when the plaintiff attempted to have his medical records altered to allow him to return to work in the Correctional Industries despite his conditions, defendant Hopta declined to allow him to do so, indicating that the plaintiff's health was more important.

Furthermore, the record establishes that while employed in Correctional Industries, the plaintiff was provided a dust mask to wear. The plaintiff testified that he did not wear the mask as directed because, in his opinion, the mask did not work.

Finally, the record establishes that SCI-Mahanoy was an accredited correctional facility in accordance with the American Corrections Association. In order to receive such accreditation, the institution must meet certain standards including, but not limited to, safe working areas for inmates. The institution must also comply with building and safety codes, environmental conditions, safety and emergency procedures, sanitation and hygiene, and inmate health care. Additionally, all SCI-Mahanoy buildings, operations and work areas are subject to independent team inspection and audit to assure compliance with acceptable standards.

Based upon all of the foregoing, the plaintiff has failed to establish that defendant Hopta was aware of and disregarded an excessive risk of harm to the plaintiff.  Therefore, the defendants' motion for summary judgment will be granted on this basis.

To the extent that the plaintiff alleges an Eighth Amendment claim against defendant Cerullo for denial of proper medical care, in order to establish an Eighth Amendment claim based upon allegations of denial of proper medical care, an inmate must demonstrate a deliberate indifference to a serious medical need.  Estelle v. Gamble, 429 U.S. 97 (1976).   This

standard requires both deliberate indifference on the part of the prison officials and a serious medical need on the part of the prisoner. See West v. Keve, 571 F.2d 158 (3d Cir. 1978).

A deliberate action is one which is intentional, requiring the actor to have knowledge of the events attributed to the injury and the ability to control the outcome. "To establish a constitutional violation, the indifference must be intentional and the action related thereto deliberate." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives, does not support an Eighth Amendment claim. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (l0th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (l0th Cir. 1976), cert. denied., 450 U.S. 1041 (1981).

A medical need is "serious" where it has been diagnosed by a physician as mandating treatment, or if it is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203 (1st Cir. 1990), cert. denied, 500 U.S. 956 (U.S. Mass. June 3, 1991) (No. 90-7632)(citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)).

The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional deprivation. Whitley v. Albers, 475 U.S. 312 (1986); Davidson v. O'Lone, 474 U.S. 344 (1986). In Daniels v. Williams,

17

474 U.S. 327 (1986), the Court noted that "[l]ack of due care suggest no more than a failure to measure up to the conduct of a reasonable person."  Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations.  Wilson v. Seiter, 501 U.S. 294 (1991).

Further, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, the federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law.  See  Ellison v. Scheipe, 570 F.Supp. 1361, 1363 (E.D.Pa. 1983); Inmates of Allegheny Jail v. Pierce, 612 F.2d 754,762 (3d Cir. 1979); See also Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desired.  Farmer v. Carlson, supra, 685 F. Supp. at 1339.

In general, prison staff members who are not medical personnel cannot be held liable for failing to respond to a prisoner's medical complaints where the prisoner was receiving medical treatment from prison doctors at the complained time. Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). See also Bednar v. County of Schuylkill, 29 F.Supp.2d 250, 256 (E.D.Pa. 1998); Key v. Brewington-Carr, 2000 WL 1346688 at *38 (D.Del. 2000). This holding has, however, been limited by Sprull v. Gillis, 372 F.3d 218 (3d Cir. 2004), in which

the Third Circuit held that a non-physician supervisor may be liable under §1983 if he had knowledge or reason to know of the medical mistreatment.

Here, even assuming a serious medical need, the record establishes that defendant Cerullo is the Health Care Administrator at SCI-Mahanoy. She is neither a prison doctor nor on the medical staff.  The plaintiff testified at his deposition that he was diagnosed by a doctor, who treated him and prescribed him medication.  He admitted that he was not seen or treated by defendant Cerullo. The plaintiff further admitted that he never filed any grievances which would alert defendant Cerullo to any alleged medical mistreatment.  The record fails to establish that defendant Cerullo had actual knowledge or reason to believe that the plaintiff was not being treated or was being mistreated by prison medical staff.  Thus, the plaintiff has failed to establish an Eighth Amendment medical claim and the defendants' motion for summary judgment will be granted on this basis as well.

### IV.   CONCLUSION

Based upon the foregoing, **IT IS HEREBY ORDERED THAT** the

defendants' motion for summary judgment, **(Doc. No. 37)**, is **GRANTED**.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** January 23, 2006
O:\shared\Memorandums\2004 MEMORANDUMS\04-1634.01.wpd

20